ORIGINAL

IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

DUBLIN DIVISION

FILED
U.S. DISTRICT COURT
AUGUSTA DIV.
2012 APR 17 P 2: 45
CLERK _____
SO. DIST. OF GA.

| | | |
|---|---|---|
| HERMAN MAHONE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CV 311-101 |
| | ) | |
| JASON MEDLIN, Warden, GEORGIA | ) | |
| DEPARTMENT OF CORRECTIONS, | ) | |
| CCA WHEELERS, MS. HOLLOWAY, | ) | |
| Unit Manager, MR. WRIGHT, | ) | |
| MS. BONER, FNU SIGHTS, Investigator, | ) | |
| CLASSIFICATION COMMITTEE, | ) | |
| STAFF OF 900 UNIT, and JOHN DOE, | ) | |
| Counselor,[1] | ) | |
| | ) | |
| Defendants. | ) | |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATIONS

Plaintiff, an inmate at Georgia State Prison ("GSP") in Reidsville, Georgia, has submitted to the Court for filing a complaint brought pursuant to 42 U.S.C. § 1983.[2] Because he is proceeding *in forma pauperis*, Plaintiff's complaint must be screened to protect potential defendants. Phillips v. Mashburn, 746 F.2d 782, 785 (11th Cir. 1984). Pleadings drafted by

---

[1] Plaintiff filed his form complaint (doc. no. 1) along with several pages of attachments. Although docketed separately, upon inspection it appears that Plaintiff continues the allegations and requests for relief asserted in his form complaint on additional sheets of paper (doc. no. 3). In that document, Plaintiff additionally names the Classification Committee, the staff of the 900 Unit, and an individual he identifies as a counselor at WCF ("John Doe"), as Defendants in this action. The **CLERK** is **DIRECTED** to add these parties as Defendants in accordance with the caption of this Order.

[2] Although Plaintiff is currently incarcerated at GSP, most of the events forming the basis of Plaintiff's complaint occurred while he was incarcerated at Wheeler Correctional Facility ("WCF") in Alamo, Georgia. (Doc. no. 1.)

*pro se* litigants must be liberally construed, Haines v. Kerner, 404 U.S. 519, 520-21 (1972) (*per curiam*), but the Court may dismiss a complaint, or any part thereof, that is frivolous or malicious or that fails to state a claim upon which relief may be granted. 28 U.S.C. §§ 1915(e) & 1915A.[3]

The Court notes from the outset that Plaintiff initiated this lawsuit against the named Defendants on behalf of both himself and his son, Jamrus Smith ("Mr. Smith"), both of whom were incarcerated at WCF at the time the suit was filed. (Doc. no. 1, p. 1.) In a previous Report and Recommendation ("R&R"), the Court recommended that Mr. Smith be dismissed as a party from the lawsuit because multi-plaintiff *in forma pauperis* civil actions are prohibited under the terms of the Prison Litigation Reform Act ("PLRA"). (Doc. no. 6 (citing Hubbard v. Haley, 262 F.3d 1194, 1996 (11th Cir. 2001).) The presiding District Judge adopted the R&R as the opinion of the District Court (doc. no. 8), and denied Plaintiff's request for reconsideration of that decision (doc. no. 18). Plaintiff has since filed a notice of appeal regarding the dismissal of Mr. Smith from this action.[4] (Doc. no. 20.)

---

[3]Under 28 U.S.C. § 1915(b)(4), a prisoner cannot be prohibited from bringing a civil action because he is unable to pay an initial fee; thus, the Court will proceed to screen Plaintiff's complaint even though he is unable to pay any initial partial filing fee. However, in accordance with the terms of the Consent to Collection of Fees form which Plaintiff signed, he remains liable for the full $350.00 filing fee.

[4]As an initial matter, given that Plaintiff has filed an interlocutory appeal regarding Mr. Smith's dismissal as a party to this case, the Court must address whether it retains jurisdiction over Plaintiff's complaint. It does. See, e.g., United States v. Khoury, 901 F.2d 948, 969 n.20 (11th Cir.1990) (explaining that interlocutory notice of appeals do not automatically divest a district court of jurisdiction to proceed with a case); United States v. Hitchmon, 602 F.2d 689, 691 (5th Cir. 1979) (*en banc*) *superceded by statute on other grounds* (holding that an appeal of a non-appealable order does not divest district court of jurisdiction).

2

I.  **BACKGROUND**

*Liberally* construing Plaintiff's complaint,[5] the Court finds that Plaintiff names the following Defendants: (1) Jason Medlin, the Warden of WCF, (2) CCA Wheelers,[6] (3) the Georgia Department of Corrections ("GDOC"); (4) Ms. Holloway, who Plaintiff identifies as the Unit Manager of the 900 Unit at WCF; (5) Mr. Wright, an employee at WCF; (6) Ms. Boner, an employee at WCF; (7) Investigator Sights; (8) the Classification Committee at WCF; (9) the staff of the 900 Unit at WCF; and (10) John Doe, an unnamed counselor at WCF. (Doc. no. 1, pp. 1, 3; doc. no. 3, p. 2.)

According to Plaintiff, he has requested pain medication for over 90 days because he has a problem with his left leg, which he asserts is "about to go out." (Doc. no. 1, p. 5.) He further alleges that he saw a doctor "and was given a knee brace and pills that don't work." (Id.) Plaintiff also alleges, without explanation, that CCA Wheelers and the GDOC have violated his rights by preventing him from corresponding with his children. (Id.) Plaintiff also appears to assert that Investigator Sights refused to let him see or speak with his son, Mr.

---

[5]As noted above, Plaintiff's complaint includes both his form complaint (doc. no. 1) and additional pages elaborating on the claims and requests for relief raised in his complaint (doc. no. 3). In addition, Plaintiff has filed a "Supplemental Complaint" in which he elaborates on many of the allegations in his form complaint, as well as raises new allegations regarding his treatment at GSP, his current place of incarceration. (Doc. no. 19.) Because Defendants have neither been served nor filed an answer, Plaintiff is authorized to amend his complaint once as a matter of right. See Fed. R. Civ. P. 15(a)(1); see also Mayle v. Felix, 545 U.S. 644, 655 (2005) ("Before a responsive pleading is served, pleadings may be amended once as a 'matter of course,' *i.e.*, without seeking court leave." (citing Fed. R. Civ. P. 15(a))). While the preferred method for amendment is to include all allegations in a single document rather than amending in a piecemeal fashion, the Court will in this instance read Plaintiff's amendment in conjunction with his form complaint and associated pages. (Doc. nos. 1, 3, 19.) For ease of reference, the Court will hereinafter refer to all these documents collectively as Plaintiff's "complaint."

[6]The Court has adopted the spelling of "CCA Wheelers'" name as it appears in Plaintiff's complaint. (See doc. no. 1, p. 1.)

3

Smith, while they were both incarcerated at WCF. (Doc. no. 3, p. 2.) Plaintiff also asserts that he wrote to Warden Medlin requesting to speak with him about Mr. Smith's care at WCF, but Warden Medlin "refuse[d] to talk to [him]." (Doc. no. 19, p. 1.) Plaintiff further asserts that his concerns for Mr. Smith have caused him "mental [and] emotional injuries" and that he has been taking medication for stomach ulcers ever since Mr. Smith was placed in segregation, although it is unclear at what point in time this occurred. (Id. at 2.)

In addition, Plaintiff alleges that "the Unit Manager," – presumably Ms. Holloway – and another employee at WCF had threatened to remove him from the faith-based program "for over four weeks." (Doc. no. 1, p. 5.) He further asserts that he was ultimately removed from the faith-based program because he complained about Mr. Smith's treatment and because the Unit Manager discovered that Plaintiff "was doing paper work on her unit on how her unit is run." (Id.; doc. no. 19, p. 2.) Plaintiff alleges that the Unit Manager claimed that Plaintiff was being removed from the faith-based program because he was not following the rules, an allegation that he implies is untrue. (Doc. no. 1, p. 5.) Moreover, Plaintiff asserts that he was retaliated against – he does not say by whom – when he was transferred from WCF to GSP, causing him to lose "a good prison job" at WCF. (Doc. no. 19, p. 2.)

While at GSP, Plaintiff asserts that his "phone [has not been] turn[ed] on," and GSP officials have refused to permit him to make his own phone calls. (Id. at 2-3.) Plaintiff further asserts that he has repeatedly sent letters to Coastal State Prison, apparently to contact Mr. Smith, who appears to have been transferred there; however, Plaintiff asserts that although GSP approves his outgoing letters, Coastal State Prison returns them as "not approve[d]." (Id. at 3.)

Plaintiff also alleges that he has dentures and requested "something to keep [his] plates

4

lock[ed] down because food got under them" and cut his gums, causing pain while eating. (Id. at 2.) Further, Plaintiff asserts that was given eyeglasses – without which he cannot see to read or write – but he "never went back to get them adjusted." (Id. at 3.) It is unclear where or at what point Plaintiff suffered the alleged problems from his dentures and eyeglasses, however. Plaintiff further alleges that he filed several unspecified grievances, but the John Doe counselor at WCF refused to let him file others. (Doc. no. 1, p. 5; doc. no. 3, pp. 1-2.)

The remainder of Plaintiff's allegations concern Mr. Smith's treatment at WCF. (See generally doc. nos. 1, 3.) Because the Court determines below that Plaintiff's claims regarding his son are not properly brought in this action, see infra Part II.G, these allegations will not be summarized in great detail. The Court notes that Plaintiff alleges, *inter alia*, that Ms. Boner assaulted Mr. Smith by punching him in the back with a "close[d] fist;" that Mr. Wright, the Classification Committee, and other prison officials transferred Mr. Smith to dorms throughout WCF where his personal property was taken and where he was attacked by gang members; and that the prison staff of the 900 Unit failed to intervene when Mr. Smith was attacked. (Doc. no. 1, pp. 4-5; doc. no. 3, p. 2.)

In his request for relief, Plaintiff seeks injunctive relief and damages for his pain and suffering. (Doc. no. 1, p. 6; doc. no. 3, p. 1.)

## II. DISCUSSION

### A. Failure to State a Claim Regarding Grievances

Plaintiff's claim that the John Doe counselor refused to take his grievances fails to state a claim upon which relief can be granted. Under Eleventh Circuit law, "an inmate has no constitutionally-protected liberty interest in access to [a prison grievance] procedure." Bingham v. Thomas, 654 F.3d 1171, 1177 (11th Cir. 2011) (*per curiam*). Therefore,

Plaintiff's allegations regarding the counselor's refusal to take his grievances fail to state a § 1983 claim upon which relief may be granted. See id.; see also Massey v. Helman, 259 F.3d 641, 647 (7th Cir. 2001) ("[T]he existence of a prison grievance procedure confers no liberty interest on a prisoner. . . . A state-created prison grievance procedure is simply a procedural right and does not confer any substantive right upon an inmate."); Adams v. Rice, 40 F.3d 72, 75 (4th Cir. 1994) ("[T]he Constitution creates no entitlement to grievance procedures or access to any such procedure voluntarily established by a state."); Ouzts v. Cummins, 825 F.2d 1276, 1278 (8th Cir. 1987) (failure to respond to grievance does not constitute a due process violation); Azeez v. DeRobertis, 568 F. Supp. 8, 10 (N.D. Ill. 1982) (failure to process plaintiff's grievances is not actionable under § 1983). Therefore, Plaintiff's grievance claim should be dismissed.

### B. Failure to State a Claim Regarding Association with Children

Liberally construing Plaintiff's allegations in his favor and granting him the benefit of all reasonable inferences to be derived from the facts alleged, the Court finds that the complaint fails to state a claim for relief against Investigator Sights, CCA Wheelers, and the GDOC based on his allegations that he was prevented from corresponding with his children or seeing or speaking with Mr. Smith.

First, Plaintiff does not explain how CCA Wheelers or the GDOC prevented him from corresponding with his children. In particular, although Plaintiff alleges in conclusory fashion that the "[Georgia] Department of Correction[s] and CCA [Wheelers] violated [his] constitutional rights for over 4 years by not letting [him] cor[re]spond with [his] own kids" (doc. no. 1, p. 5), he does not explain how the GDOC or CCA Wheelers – as a state agency or corporation, respectively – have acted to prevent him from doing so. Nor does he explain

6

how these Defendants were otherwise aware that he was prevented from corresponding with his children. However, "Section 1983 requires proof of an affirmative causal connection between the actions taken by a particular person under color of state law and the constitutional deprivation." LaMarca v. Turner, 995 F.2d 1526, 1538 (11th Cir. 1993) (internal quotation marks and citations omitted).

Furthermore, Plaintiff's allegations that Investigator Sights, CCA Wheelers, and the GDOC prevented him from corresponding with, speaking with, or seeing his children are vague and conclusory at best. However, vague and conclusory allegations are not sufficient to state a claim. See Taylor v. Singletary, 148 F.3d 1276, 1285 (11th Cir. 1998) (noting that a "bare, conclusory allegation . . . is insufficient, without more, to warrant further evidentiary consideration"); see also Randall v. Scott, 610 F.3d 701, 709 (11th Cir. 2010) (noting that conclusory allegations are not entitled to an assumption of truth in determining whether a complaint states a claim upon which relief may be granted). Accordingly, Plaintiff's allegations fail to state a viable § 1983 claim against Investigator Sights, CCA Wheelers, and the GDOC. Accordingly, these Defendants should be dismissed.[7]

### C. Failure to State a Claim Against Warden Medlin

Plaintiff's allegations also fail to state a claim against Warden Medlin. As noted above, "[s]ection 1983 requires proof of an affirmative causal connection between the actions taken

---

[7]The Court notes, however, that even if Plaintiff had stated a valid claim regarding corresponding with his children, the GDOC, as a state agency, is not subject to liability on this claim. The Eleventh Amendment bars a federal lawsuit against a state or one of its agencies or departments "unless the state either consents to suit or waives its Eleventh Amendment immunity." Stevens v. Gay, 864 F.2d 113, 114 (11th Cir. 1989) (citing Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 98-100 (1984)); see Alabama v. Pugh, 438 U.S. 781, 781-82 (1978) (*per curiam*). As there is no indication that the State of Georgia has consented to being sued in this case, this provides another basis for dismissing the GDOC as a Defendant.

7

by a particular person under color of state law and the constitutional deprivation." LaMarca, 995 F.2d at 1538 (internal quotation marks and citations omitted). Here, Plaintiff does not explain how Warden Medlin's actions amount to a violation of Plaintiff's constitutional rights. Plaintiff's only allegation of wrongdoing by Warden Medlin is that he refused to speak with Plaintiff regarding Mr. Smith's treatment at WCF. However, as explained *infra*, Plaintiff does not have standing to assert Mr. Smith's rights. Thus, in the absence of an allegation of a connection between the actions of Warden Medlin and the deprivation of any constitutional right, Plaintiff fails to state a claim for relief against Warden Medlin. Therefore, Warden Medlin should be dismissed from this case.

### D. Claims Regarding GSP Are Unrelated and May Not Be Brought in this Action

As noted above, a portion of Plaintiff's complaint consists of allegations that occurred during his incarceration at GSP. However, these claims are unrelated to his claims arising out of events at WCF and they therefore may not be joined in this action. It is well settled that a plaintiff may not join unrelated claims and various defendants unless the claims arise "out of the same transaction, occurrence, or series of transactions or occurrences and if any question of law or fact common to all defendants will arise in the action." Fed. R. Civ. P. 20(a). "In determining what constitutes a transaction or occurrence for the purposes of Rule 20(a), courts have looked for meaning to Fed. R. Civ. P. 13(a) governing compulsory counterclaims." Alexander v. Fulton County, Ga., 207 F.3d 1303, 1323 (11th Cir. 2000), *overruled on other grounds by* Manders v. Lee, 338 F.3d 1304, 1328 n.52 (11th Cir. 2003). As recognized by the Eleventh Circuit Court of Appeals in analyzing the requirements of Rule 13(a), "a claim arises out of the same transaction or occurrence if there is a logical relationship between the claims."

Construction Aggregates, Ltd. v. Forest Commodities Corp., 147 F.3d 1334, 1337 n.6 (11th Cir. 1998) *(per curiam)* (citation omitted). Here, the claims that Plaintiff attempts to assert regarding his use of the phone at GSP and his ability to send mail from GSP to Coastal State Prison are not sufficiently related to his other claims, which concern his confinement at WCF. Put plainly, the claims relating to GSP clearly involve different time-frames and different prisons and thus do not involve the "same transaction or occurrence."

Furthermore, GSP is located in Reidsville, Georgia, in the Statesboro Division of the Southern District of Georgia, whereas WCF is located in the Dublin Division. Under this Court's Local Rules, for an action consisting of claims against prison officials at WCF, venue is appropriate in this Division, whereas for an action consisting of claims arising out of events occurring at GSP, the Statesboro Division is the proper venue. See Loc. R. 2.1.

In sum, it is improper to join claims relating to events alleged to have occurred at GSP and WCF in a single action. Plaintiff's claims relating to events at GSP should therefore be dismissed without prejudice. Should Plaintiff choose to re-file his claims regarding events occurring at GSP, he should do so by commencing a new action, including a new complaint and request to proceed *in forma pauperis*, in the Stateboro Division of the Southern District of Georgia.[8, 9]

---

[8] Plaintiff should be aware filings in a case in the Statesboro Division must be made with the Clerk, U.S. District Court, Post Office Box 8286, Savannah, Georgia 31412.

[9] In light of the Court's conclusion that Plaintiff's claims involving WCF have been properly filed in the Dublin Division but that Plaintiff should re-file in the Statesboro Division any claims he may wish to bring regarding the events at GSP, Plaintiff's request to transfer the entire case to the Statesboro Division should therefore be **DENIED**. (Doc. no. 22.) The Court further notes that Plaintiff requests "a copy of all legal documents" that have been filed in this Division. This request should likewise be **DENIED**. See Wanninger v. Davenport, 697 F.2d 992, 994 (11th Cir. 1983) *(per curiam)* ("A prisoner's right of access to the court does not

### E. Failure to State Claim Regarding Medical Care, Mental and Emotional Injuries, or Transfer to GSP

Liberally construing Plaintiff's allegations in his favor and granting him the benefit of all reasonable inferences to be derived from the facts alleged, the Court finds that Plaintiff fails to associate any individual acting under color of state law with his allegations that he has received inadequate medical care, suffered "mental and emotional injuries," and was transferred to GSP in retaliation for complaining about Mr. Smith. As noted above, "[s]ection 1983 requires proof of an affirmative causal connection between the actions taken by a particular person under color of state law and the constitutional deprivation." LaMarca, 995 F.2d at 1538.

Here, Plaintiff asserts that (1) he had to put in medical requests for 90 days for his leg pain and was then given "pills that don't work;" (2) he has problems with his dentures that cause him pain while eating; (3) he did not have his eyeglasses adjusted; (4) he suffered "mental and emotional injuries" as a result of his concern for Mr. Smith's well-being and took medication for stomach ulcers after Mr. Smith was placed in segregation; and (5) he was transferred from WCF to GSP in retaliation for complaining about Mr. Smith's treatment. (Doc. no. 1, p. 5; doc. no. 19, pp. 1-3.) However, Plaintiff does not name a specific individual at WCF in connection with any of these alleged constitutional deprivations. Indeed, Plaintiff does not explain how any of the named Defendants were responsible for, or had control over, his medical care, the state of Plaintiff's mental and emotional health, or Plaintiff's prison

---

include the right of free unlimited access to a photocopying machine . . . ." (citation omitted)); see also Jones v. Franzen, 697 F.2d 801, 803 (7th Cir. 1983) ("[B]road as the constitutional concept of liberty is, it does not include the right to xerox."). Plaintiff may obtain copies of the documents he requests at the standard rate of fifty ($.50) cents per page.

assignment. Nor does Plaintiff explain how any of the named Defendants were even aware of these various wrongs he allegedly suffered. In the absence of an allegation of any such connection between a particular named Defendant with any of these alleged unconstitutional deprivations, Plaintiff fails to state a claim for relief.

Moreover, Plaintiff's claims regarding his dentures, eyeglasses, "mental and emotional injuries," and transfer are vague at best, and are therefore insufficient to state a claim for that reason as well. See Taylor, 148 F.3d at 1285. In sum, Plaintiff's allegations regarding his alleged lack of adequate medical treatment, mental and emotional injuries, and retaliatory transfer fail to state a claim upon which relief can be granted.

### F. Claims for Injunctive Relief are Moot

An inmate's claim for injunctive relief against prison officials is ordinarily subject to dismissal for mootness when the prisoner is transferred to another prison and is no longer under the control of the prison officials against whom injunctive relief is sought. Spears v. Thigpen, 846 F.2d 1327, 1328 (11th Cir. 1988) (*per curiam*); Wahl v. McIver, 773 F.2d 1169, 1173 (11th Cir. 1985) (*per curiam*) ("Absent class certification, an inmate's claim for injunctive relief and declaratory relief in a section 1983 action fails to present a case or controversy once the inmate has been transferred.").

Here, Plaintiff requests various forms of injunctive relief, including requests that he and Mr. Smith be provided with medical care, that Mr. Smith not be housed "in places where his life would be in danger," and that Plaintiff's grievances not be refused. (Doc. no. 1, p. 6; doc. no. 3, p. 1.) However, since the time of the events alleged in his complaint, Plaintiff has been transferred from WCF to GSP, where he is currently incarcerated. (Doc. no. 9.) There is no indication that he will be transferred back to WCF, and his claims for injunctive relief should

11

accordingly be dismissed as moot.[10,11]

### G. Claims Regarding Mr. Smith

Finally, the Court turns to Plaintiff's various claims against Mr. Wright, Ms. Boner, the Classification Committee, and the Staff of the 900 Unit regarding Mr. Smith's treatment at WCF. Plaintiff may not bring these claims on Mr. Smith's behalf, however, as he lacks standing to assert another inmate's rights. See Miller v. Conway, 331 F. App'x 664, 665 (11th Cir. 2009) (*per curiam*) (explaining that a prisoner lacks standing to pursue a claim regarding the violation of another prisoner's constitutional rights) (citing Granite State Outdoor Adver., Inc. v. City of Clearwater, 351 F.3d 1112, 1116 (11th Cir. 2003)); see also Church v. City of Huntsville, 30 F.3d 1332, 1335-36 (11th Cir. 1994). Accordingly, Plaintiff may not litigate the various claims he raises with regard to Mr. Smith's treatment at WCF.[12]

For the same reason, Plaintiff's request that Mr. Smith be transferred "to the Columbus Division" should therefore be **DENIED**. (Doc. no. 11.)

---

[10] As explained *infra*, Plaintiff lacks standing to assert claims on behalf of Mr. Smith, and thus his requests for injunctive relief associated with those claims are likewise moot.

[11] The Court notes that Plaintiff titled one of the supplemental pages of his complaint "Preliminary Injunction and A Temporary Restraining Order." (Doc. no. 3, p. 1.) As previously explained, this appears to be simply an extension of the relief requested in his complaint. Yet even if the Court were to construe this page as a motion for injunctive relief, Plaintiff would not be entitled to such relief for the reasons outlined above. At any rate, the Court also notes that this document is unsigned, which precludes its consideration as a motion. See Loc. R. 11.1 ("Every pleading, motion, or other paper presented for filing shall, pursuant to Federal Rule of Civil Procedure 11, be signed . . . .")

[12] As the Court has previously explained (doc. no. 6, p. 3), if Mr. Smith wishes to file his own complaint and motion to proceed *in forma pauperis*, he is of course free to do so, subject to the provisions of the PLRA.

12

## III. CONCLUSION

For the reasons stated above, the Court **REPORTS** and **RECOMMENDS** that the following of Plaintiff's claims be **DISMISSED**: his claims regarding the grievance procedure against the John Doe counselor; his claim that he was prevented from corresponding with his children against CCA Wheelers and the GDOC; his claim that he was prevented from seeing or speaking with his son against Investigator Sights; his claims regarding his medical treatment and mental and emotional injuries; and his claim regarding his transfer to GSP. The Court further **RECOMMENDS** that the following Defendants be dismissed: Warden Medlin, the Georgia Department of Corrections, CCA Wheelers, Mr. Wright, Ms. Boner, FNU Sights, the Classification Committee, the Staff of the 900 Unit, and the John Doe counselor. In addition, the Court **RECOMMENDS** that all claims regarding events alleged to have occurred at GSP be **DISMISSED** without prejudice. Finally, the Court **RECOMMENDS** that Plaintiff's request that Mr. Smith be transferred "to the Columbus Division," as well as his motion to transfer venue, be **DENIED**.[13] (Doc. nos. 11, 22.)

SO REPORTED and RECOMMENDED this 17th day of April, 2012, at Augusta, Georgia.

W. LEON BARFIELD
UNITED STATES MAGISTRATE JUDGE

---

[13] In a simultaneously issued Order, the Court has directed that service of process be effected on Defendant Holloway based on Plaintiff's First Amendment claim that she retaliated against him for complaining about his son's treatment and how she ran her unit.

13