FILED
U.S. DISTRICT COURT
AUGUSTA DIV.
2013 JUL -3 P 4:16
CLERK_____
SO. DIST. OF GA.

IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

DUBLIN DIVISION

| | |
|---|---|
| HERMAN MAHONE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CV 311-101 |
| | ) |
| MS. HOLLOWAY, Unit Manager, | ) |
| | ) |
| Defendant. | ) |

___

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

___

At the time of the events giving rise to the above-captioned case brought pursuant to 42 U.S.C. § 1983, Plaintiff was an inmate incarcerated at Wheeler Correctional Facility ("WCF") in Alamo, Georgia. Plaintiff is proceeding *pro se* and *in forma pauperis* ("IFP"). The case is now before the Court on the parties' cross motions for summary judgment. (Doc. nos. 40, 46, 49.) For the reasons set forth below, the Court **REPORTS** and **RECOMMENDS** that Defendant's motion for summary judgment be **GRANTED**, that Plaintiff's motion for summary judgment be **DENIED**, that a final judgment be **ENTERED** in favor of Defendant, and that this civil action be **CLOSED**.

**I.    FACTS**

Plaintiff began serving his current sentence in 2007 and, at the time he filed his complaint on November 3, 2011, had been incarcerated at WCF for "over 120 days." (See doc. no. 1, p. 2.) Plaintiff was subsequently transferred among various prisons and is

presently incarcerated at Georgia State Prison in Reidsville, Georgia. (See doc. no. 51.) Defendant Holloway was a Unit Manager at WCF during Plaintiff's incarceration there. (Doc. no. 40, Ex. B (hereinafter "Holloway Aff."), ¶ 2.)

According to Plaintiff, Ms. Holloway threatened to remove him from WCF's faith-based dorm for a period of four weeks based on the accusation that he would not follow "her rules," and then ultimately did remove him from the faith-based dorm on September 26, 2011, in retaliation for his "doing paper work on her unit on how her unit is run."[1] (Doc. no. 1, p. 5.) In a "supplemental complaint," Plaintiff further elaborated that he was removed from the faith-based program "without any type of disciplinary write-up" and subsequently placed in a dorm "with people that come out of segregation for disciplinary action." (Doc. no. 19, p. 2.)

Ms. Holloway filed a motion for summary judgment, asserting (1) Plaintiff failed to exhaust his administrative remedies; (2) Plaintiff's removal from the faith-based program did not violate a protected right; and (3) Plaintiff suffered no physical injury and is therefore not entitled to damages. (See generally doc. no. 40.) Ms. Holloway additionally points out that Plaintiff does not actually seek any form of relief from her, but instead requests that the Corrections Corporation of America and the Georgia Department of Corrections provide him with medical treatment and remove his disciplinary charges. In addition, Plaintiff asks that an unspecified person or entity compensate him for pain and suffering and "not letting [him]

---

[1] The Court dismissed a litany of attempted claims and originally-named defendants on initial screening of Plaintiff's complaint pursuant to the IFP statute, 28 U.S.C. § 1915A, on April 17, 2012. (Doc. nos. 23, 32.) Additionally, Jamrus Smith, whom Plaintiff originally listed as a co-plaintiff, was dismissed shortly after Plaintiff initiated this case. (Doc. nos. 6, 8.)

be able to contact [his] kids." (Id. at 6, 11.)

## A. Grievances Submitted by Plaintiff

Ms. Myrtle Evans, the Grievance Coordinator at WCF, testifies by affidavit that the only formal and informal grievances filed by Plaintiff at WCF concern prison pill call and are bereft of any reference to either the faith-based dorm or Ms. Holloway. (Doc. no. 40, Ex. A (hereinafter "Evans Aff."), ¶¶ 2-4.) Specifically, Plaintiff filed a formal grievance on July 14, 2011 concerning prison pill call, as well as related informal grievances prior to that date. (Doc. no. 40, pp. 19-28.) Furthermore, because Plaintiff's July 14th formal grievance was rejected on August 11, 2011 and he did not appeal the denial, he has not exhausted his available prison grievance remedies even as to the claims asserted in that grievance. (Evans Aff. ¶¶ 4, 5.) Plaintiff has not filed any grievances against Ms. Holloway in any capacity. (Id. ¶ 6.)

Plaintiff never challenges the indisputable fact that neither his informal nor his formal grievances make any mention of the faith-based dorm or Ms. Holloway, nor does he suggest that he ever filed a grievance against Ms. Holloway. Instead, Plaintiff counters that, after "Ms. Hamilton" – whom he did not name as a defendant – threatened to remove him from the faith-based dorm, he "went to the counselor with the complaint about Ms. Hamilton," was told to "go to chow," and subsequently overheard Ms. Holloway tell "somebody to put in a move slip on [Plaintiff] I want him out of my unit." (Doc. no. 46, pp. 2-3.) Plaintiff additionally appears to admit that he failed to exhaust his administrative remedies concerning his retaliation claim against Ms. Holloway, but he also alleges in markedly vague and conclusory fashion that "[c]ounselor refuse[d] to [accept] my grievance presenting the facts

3

relating to this complaint in retaliation." (Id. at 4.)

In response to this allegation, Ms. Holloway has additionally provided the affidavits of Terri McRae, who was the correctional counselor for Plaintiff's unit in the faith-based dorm during his incarceration at WCF (doc. no. 49, Ex. A (hereinafter "McRae Aff."), ¶¶ 2-3), and Auriel Fields, who was the case manager for Plaintiff and his unit during that same period of time (doc. no. 49, Ex. B (hereinafter "Fields Aff."), ¶¶ 1-2). Ms. McRae states that Plaintiff never asked her to file an informal or formal grievance related to threats of retaliation, transfer, or removal from the faith-based program, and that she did not refuse to accept such forms from him. (McRae Aff. ¶ 3.) During the time of Plaintiff's incarceration, inmates were required to turn in completed grievance forms to their case manager. (Id. ¶ 4.) Ms. Fields testified that Plaintiff did not ask her to file an informal or formal grievance concerning threats of retaliation or removal from the faith-based unit but that she would have accepted them had he done so. (Fields Aff. ¶¶ 3-4.)

### B. The Administrative Grievance Process

The grievance procedures available to prisoners at WCF are established by the Georgia Department of Corrections' Standard Operating Procedure ("SOP") IIB05-0001 that became effective on June 1, 2004. Once an inmate has unsuccessfully attempted to resolve a complaint through discussion with the staff involved, the administrative remedies procedure commences with the filing of an informal grievance. SOP IIB05-0001 § VI(B). The inmate has ten calendar days from "the date the offender knew, or should have known, of the facts giving rise to the grievance" to file the informal grievance. SOP IIB05-0001 § VI(B)(5). The timeliness requirements of the administrative process may be waived upon

4

a showing of good cause. See id. §§ VI(C)(2) & (D)(2). The prison must respond to the informal grievance within ten calendar days of its receipt by the inmate's counselor, and the informal grievance procedure must be completed before the inmate will be issued a formal grievance. Id. §§ VI(B)(12)-(13).

If unsatisfied with the resolution of his informal grievance, an inmate must complete a formal grievance form and return it to his counselor within five business days of his receipt of the written resolution of his informal grievance. Id. § VI(C)(2). Once the formal grievance is given to the counselor, the Warden/Superintendent has 30 calendar days to respond. Id. § VI(C)(14). If the inmate is not satisfied with the Warden's response to the formal grievance, he has five business days from the receipt of the response to file an appeal to the Office of the Commissioner, which has 90 calendar days after receipt of the grievance appeal to respond. Id. §§ VI(D)(2) & (5). The grievance procedure is terminated upon the issuance of a response from the Commissioner's Office. See id. § VI(D).

## II. DISCUSSION

### A. Summary Judgment Standard

Summary judgment is appropriate only if "there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). Applicable substantive law identifies which facts are material in a given case. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). "The mere existence of some factual dispute will not defeat summary judgment unless that factual dispute is material to an issue affecting the outcome of the case." McCormick v. City of Fort Lauderdale, 333 F.3d 1234, 1244 (11th Cir. 2003) (citation omitted).

5

When seeking summary judgment, the movant must show, by reference to materials on file, that there are no genuine issues of material fact to be decided at a trial. Clark v. Coats & Clark, Inc., 929 F.2d 604, 608 (11th Cir. 1991). If the burden of proof at trial rests with the movant, to prevail at the summary judgment stage, the movant must show that, "on all the essential elements of its case . . . , no reasonable jury could find for the nonmoving party." United States v. Four Parcels of Real Prop., 941 F.2d 1428, 1438 (11th Cir. 1991) (*en banc*). On the other hand, if the non-moving party has the burden of proof at trial, the movant may prevail at the summary judgment stage either by negating an essential element of the non-moving party's claim or by pointing to specific portions of the record that demonstrate the non-moving party's inability to meet its burden of proof at trial. Clark, 929 F.2d at 606-08 (explaining Adickes v. S.H. Kress & Co., 398 U.S. 144 (1970) and Celotex Corp. v. Catrett, 477 U.S. 317 (1986)). Merely stating that the non-moving party cannot meet its burden at trial is not sufficient. Id. at 608. Evidence presented by the movant is viewed in the light most favorable to the non-moving party. Adickes, 398 U.S. at 157.

If the moving party carries the initial burden, then the burden shifts to the non-moving party "to demonstrate that there is indeed a material issue of fact that precludes summary judgment." Clark, 929 F.2d at 608. The non-moving party cannot carry its burden by relying on the pleadings or by repeating conclusory allegations contained in the complaint. Morris v. Ross, 663 F.2d 1032, 1034 (11th Cir. 1981). Rather, the non-moving party must respond either by affidavits or as otherwise provided in Fed. R. Civ. P. 56. "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." Anderson, 477 U.S. at 255 (quoting Adickes, 398 U.S. at 158-59). A genuine dispute as to a material fact is said to exist "if the evidence is such that a reasonable jury could return a verdict for the

nonmoving party." Id. at 248.

## B. The PLRA Exhaustion Requirement

Section 1997e(a) of the Prison Litigation Reform Act ("PLRA"), Pub. L. No. 104-134, §§ 801-810, 110 Stat. 1321 (1996), provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The PLRA's mandatory exhaustion requirement "applies to all prisoners seeking redress for prison circumstances or occurrences." Porter v. Nussle, 534 U.S. 516, 520 (2002). Moreover, the Court does not have discretion to waive the requirement, even if it can be shown that the grievance process is futile or inadequate. Alexander v. Hawk, 159 F.3d 1321, 1325-26 (11th Cir. 1998).

The PLRA also "requires proper exhaustion," meaning that a prisoner must "us[e] all steps" in the administrative process and comply with any administrative "deadlines and other critical procedural rules" along the way. Woodford v. Ngo, 548 U.S. 81, 90-93 (2006). If a prisoner fails to complete the administrative process or falls short of compliance with procedural rules governing prisoner grievances, he procedurally defaults his claims. Johnson v. Meadows, 418 F.3d 1152, 1159 (11th Cir. 2005), *cert. denied*, 548 U.S. 925 (2006).

Also, because exhaustion of administrative remedies is a "precondition" to filing an action in federal court, the Eleventh Circuit requires prisoners to complete the administrative process *before* initiating suit. Higginbottom v. Carter, 223 F.3d 1259, 1261 (11th Cir. 2000)

7

(*per curiam*); see also Miller v. Tanner, 196 F.3d 1190, 1193 (11th Cir. 1999).[2] Finally, under the PLRA, the Court has no discretion to inquire into whether administrative remedies are "plain, speedy, [or] effective." Porter, 534 U.S. at 524; see also Alexander, 159 F.3d at 1326. Rather, under the PLRA's "strict exhaustion" requirement, administrative remedies are deemed "available" whenever "'there is the possibility of at least some kind of relief.'" Johnson, 418 F.3d at 1155, 1156.

### C. Plaintiff's Failure to Exhaust

Plaintiff argues that this action should not be dismissed for failure to properly exhaust administrative remedies because the staff at WCF prevented him from filing grievances concerning his retaliation claim. Ms. Holloway, relying on the sworn affidavits of Ms. Evans, Ms. McRae, and Ms. Fields, as well as Plaintiff's grievance history, flatly contradicts these claims and maintains that nothing prevented Plaintiff from utilizing the grievance process.

The Eleventh Circuit has clearly established that a district judge may act as a factfinder in resolving whether an inmate has exhausted his non-judicial remedies. Bryant v. Rich, 530 F.3d 1368, 1373-74 (11th Cir. 2008). Additionally, this Court explained as follows in an analogous case:

> Congress enacted § 1997e(a) of the [PLRA] to *curtail* inmate litigation, not create an entire new layer of jury trials in the very

---

[2]Other federal circuits have similarly held that the PLRA does not allow a plaintiff to exhaust administrative remedies while his case is pending. See McKinney v. Carey, 311 F.3d 1198, 1200 (9th Cir. 2002); Medina-Claudio v. Rodriguez-Mateo, 292 F.3d 31, 36 (1st Cir. 2002); Neal v. Goord, 267 F.3d 116, 121-22 (2d Cir. 2001); Jackson v. Dist. of Columbia, 254 F.3d 262, 269 (D.C. Cir. 2001); Freeman v. Francis, 196 F.3d 641, 645 (6th Cir. 1999); Perez v. Wisconsin Dep't of Corr., 182 F.3d 532, 538 (7th Cir. 1999).

> overburdened court system that PLRA was meant to relieve. To hold that Priester is entitled to a jury trial on this preliminary issue [whether administrative remedies were "available"] would open the floodgates to even more litigation. Were this Court to hold otherwise, how many *convicted criminals*--in a legal world where civil-case originating perjury prosecutions are at best a rarity--would *not* then claim that their guards refused to avail them grievance forms or otherwise did something to excuse the exhaustion requirement? How many inmates like Priester, after pointing to the ensuing swearing match, would *not* then demand a jury trial on this *preliminary* issue, and thereby create a *second* litigation layer on top of the "merits" layer?
> .... [T]he Court concludes that .... exhaustion constitutes a preliminary issue for which no jury trial right exists, and therefore judges can and should make credibility determinations on exhaustion-excusal issues.

Priester v. Rich, 457 F. Supp. 2d 1369, 1377 (S.D. Ga. Apr. 3, 2006), *aff'd*, Bryant, 530 F.3d at 1379. Similarly, the Supreme Court has explained that "discredited testimony" cannot be relied upon to resist summary judgment. See Anderson, 477 U.S. at 256-57. Thus, to the extent Plaintiff relies upon his own self-serving allegations, the Court properly considers whether a "reasonable juror would undertake the suspension of disbelief necessary to credit the allegations." Jeffreys, 426 F.3d at 555.

In order to demonstrate that administrative remedies were unavailable, Plaintiff must point to specific facts showing that prison staff inhibited him from utilizing the grievance process. See Boyd v. Corr. Corp. of Am., 380 F.3d 989, 998 (6th Cir. 2004) ("nonspecific allegations of fear" and "subjective feeling[s] of futility" no excuse for failure to exhaust administrative remedies). Of course, those federal courts to consider the issue have held that threats of violent reprisal can, under certain circumstances, render administrative remedies "unavailable" or otherwise justify an inmate's failure to pursue them. See, e.g., Hemphill v. New York, 380 F.3d 680, 686-91 (2d Cir. 2004). More generally, courts have held that prison officials may, as a result of their own conduct, become equitably estopped from

9

relying upon § 1997e(a).³

The Court finds that administrative remedies were available to Plaintiff that he failed to exhaust and that his story to the contrary is not credible. Although Plaintiff makes the self-serving, naked assertion that an unidentified counselor refused to accept his grievance, his credibility is harmed by the evidence, which shows that he repeatedly availed himself of the grievance process prior to Ms. Holloway's alleged retaliatory conduct on September 26, 2011. (Doc. no. 40, pp. 19-28.) Specifically, Plaintiff filed various informal and formal grievances throughout June and July of 2011 relating to prison pill call and, in the process, made abundantly clear that he had ready access to the prison grievance system and took full advantage of it when he felt compelled to do so.

In addition, the very prison officials assigned to handle grievances by prisoners in Plaintiff's unit have testified unequivocally that Plaintiff never filed any grievances concerning his retaliation claim against Ms. Holloway, and that, had he done so, they would have accepted those grievances and submitted them. (Fields Aff. ¶¶ 3-4; see also McRae Aff. ¶ 3.) It is not improper for the Court to demand some evidence beyond Plaintiff's own self-serving statements showing that administrative remedies were not available. In Kozuh v. Nichols, 185 F. App'x 874, 877-78 (11th Cir. 2006) (*per curiam*), the Eleventh Circuit rejected a prisoner's claim "that he was 'thwarted' when officials refused to respond to his grievances, leaving the grievance procedure unavailable." In rejecting Kozuh's argument for lack of evidence, the

---

³See, e.g., Dale v. Lappin, 376 F.3d 652, 656 (7th Cir. 2004) (*per curiam*); Ziemba v. Wezner, 366 F.3d 161, 163 (2d Cir. 2004); Mitchell v. Horn, 318 F.3d 523, 529 (3d Cir. 2003); Miller v. Norris, 247 F.3d 736, 740 (8th Cir. 2001); Wright v. Hollingsworth, 260 F.3d 357, 358 n.2 (5th Cir. 2001).

Eleventh Circuit noted the existence of contrary evidence that "Kozuh was able to file numerous informal complaints." Id. at 878. The instant case is similar. Although Plaintiff maintains otherwise, there is ample evidence in the record from which to conclude that the grievance process was available to Plaintiff. In sum, the Court concludes that Plaintiff failed to comply with § 1997e(a). For this reason, the Court will not consider the alternative bases for summary judgment proffered by Ms. Holloway.

### III. CONCLUSION

In sum, the Court **REPORTS AND RECOMMENDS** that Defendant's motion for summary judgment be **GRANTED** (doc. no. 40), that Plaintiff's motion for summary judgment be **DENIED** (doc. no. 46), that a final judgment be **ENTERED** in favor of Defendant, and that this civil action be **CLOSED**.

SO REPORTED and RECOMMENDED this 3rd day of July, 2013, at Augusta, Georgia.

BRIAN K. EPPS
UNITED STATES MAGISTRATE JUDGE